SCOTT A. KRONLAND (Lead Counsel, *pro hac vice*)
REBECCA C. LEE (*pro hac vice* pending)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
E-mail: skronland@altber.com
        rlee@altber.com

JAMES S. COON, OSB No. 771450
THOMAS, COON, NEWTON & FROST
820 SW Second Ave., Suite 200
Portland, OR 97204
Telephone: (503) 228-5222
Facsimile: (503) 273-9175
E-mail: jcoon@tcnf.legal

*Attorneys for Defendant Service Employees*
*International Union Local 503*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MARGO CASH SCHIEWE, an individual, | Case No. 3:20-cv-00519-JR |
| Plaintiff, | **DEFENDANT SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 503'S MOTION TO DISMISS** |
| v . | |
| SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 503, a labor organization; OREGON DEPARTMENT OF ADMINISTRATIVE SERVICES, and KATY COBA, in her official capacity as Director of the Oregon Department of Administrative Services, | **Pursuant to Fed. R. Civ. P. 12** |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

L.R. 7-1 CERTIFICATION ................................................................................ 1

MOTION ........................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 1

INTRODUCTION .............................................................................................. 1

BACKGROUND ................................................................................................ 3

I.      Factual Background .............................................................................. 3

II.     Plaintiff's Lawsuit ................................................................................ 7

LEGAL STANDARD ......................................................................................... 8

ARGUMENT .................................................................................................... 9

I.      Plaintiff's §1983 claims for retrospective relief should be dismissed ............... 9

        A.      Plaintiff fails to allege the state action necessary for a §1983 claim ................... 12

                1.      Private action in violation of state law is not action under color of law ... 13

                2.      SEIU 503 is not a state actor ................................................. 15

        B.      Plaintiff fails to allege a First Amendment violation ............................. 18

        C.      Plaintiff fails to allege a procedural due process violation .................... 20

II.     Plaintiff's demands for prospective relief fail to present a live case or controversy ........ 22

III.    Plaintiff's state law claims should be dismissed ............................................ 23

        CONCLUSION ................................................................................... 24

# TABLE OF AUTHORITIES

**Federal Cases**

*Abood v. Detroit Board of Education*,
431 U.S. 209 (1977).................................................................................................4

*Am. Rivers v. Nat'l Marine Fisheries Serv.*,
126 F.3d 1118 (9th Cir. 1997) ..............................................................................22

*Anderson v. SEIU 503*,
400 F.Supp.3d 1113 (D. Or. 2019) ........................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................9

*Augustine v. United States*,
704 F.2d 1074 (9th Cir. 1983) ................................................................................8

*Bain v. Cal. Teachers Ass'n*,
156 F.Supp.3d 1142 (C.D. Cal. 2015) .............................................................12, 15

*Bain v. Cal. Teachers Ass'n*,
2016 WL 6804921 (C.D. Cal. May 2, 2016) ........................................................17

*Belgau v. Inslee*,
359 F.Supp.3d 1000 (W.D. Wash. 2019).................................................10, 17, 18

*Bennett v. AFSCME, Council 31, AFL-CIO*,
__F.Supp.3d __, 2020 WL 1549603 (C.D. Ill. Mar. 31, 2020) ............................10

*Blum v. Yaretsky*,
457 U.S. 991 (1982)................................................................................................17

*Bowers v. DeVito*,
686 F.2d 616 (7th Cir. 1982) .................................................................................19

*Bretz v. Kelman*,
773 F.2d 1026 (9th Cir. 1985) (en banc) ..............................................................20

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988)................................................................................................24

*Chicago Teachers Union, Local No. 1 v. Hudson*,
475 U.S. 292 (1986)................................................................................................19

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)............................................................................................22, 23

*Collins v. Womancare, Inc.*,
  878 F.2d 1145 (9th Cir. 1989) ..........................................................9, 12, 13, 15

*Cooley v. Cal. Statewide Law Enf't Ass'n*,
  385 F.Supp.3d 1077 (E.D. Cal. 2019)...................................................................10

*Crockett v. NEA-Alaska*,
  367 F.Supp.3d 996 (D. Alaska 2019) ...................................................................10

*Daniels v. Williams*,
  474 U.S. 327 (1986)..............................................................................................20

*Davis v. FEC*,
  554 U.S. 724 (2008)..............................................................................................22

*Durst v. Oregon Educ. Ass'n*,
  __ F.Supp.3d __ (D. Or. Mar. 31, 2020)..............................................................10

*Elena v. Municipality of San Juan*,
  677 F.3d 1 (1st Cir. 2012).....................................................................................21

*Few v. United Teachers Los Angeles*,
  2020 WL 633598 (C.D. Cal. Feb. 10, 2020)........................................................10

*Fisk v. Inslee*,
  759 F. App'x 632 (9th Cir. 2019) .........................................................................10

*Grossman v. Hawaii Gov't Emps. Ass'n*,
  __ F.Supp.3d__, 2020 WL 515816 (D. Haw. Jan. 31, 2020) ..............................10

*Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*,
  570 F.3d 811 (7th Cir. 2009) ................................................................................16

*Hassett v. Lemay Bank & Trust Co.*,
  851 F.2d 1127 (8th Cir. 1988) ..............................................................................13

*N.C. ex rel. Haywood v. Barrington*,
  256 F.Supp.2d 452 (M.D.N.C. 2003) ...................................................................20

*Hendrickson v. AFSCME Council 18*,
  __F.Supp.3d __, 2020 WL 365041 (D.N.M. Jan. 22, 2020).....................10, 11, 18

*Hernandez v. AFSCME California*,
  424 F.Supp.3d 912 (E.D. Cal. 2019).....................................................................10

*Hudson v. Palmer*,
  468 U.S. 517 (1984)..........................................................................................20, 21

*Janus v. AFSCME Council 31*,
    138 S.Ct. 2448 (2018) ................................................................................2, 4, 18

*Ketchum v. Alameda County*,
    811 F.2d 1243 (9th Cir. 1987) ..........................................................................19

*Knox v. Westly*,
    2006 WL 2374763 (E.D. Cal. Aug. 16, 2006) ......................................................17

*Loescher v. Minn. Teamsters Pub. & Law Enf't Emps.' Union, Local No. 320*,
    __ F.Supp.3d __, 2020 WL 912785 (D. Minn. Feb. 26, 2020) ...............................10

*Lugar v. Edmondson Oil Co.*,
    457 U.S. 922 (1982) .............................................................................. *passim*

*Manhattan Cmty. Access Corp. v. Halleck*,
    139 S.Ct. 1921 (2019) ................................................................................12, 18

*Mendez v. Cal. Teachers Ass'n*,
    419 F.Supp.3d 1182 (N.D. Cal. 2020) ................................................9, 10, 14, 15

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ...........................................................................9

*Mills v. Curry*,
    127 F. App'x 342 (9th Cir. 2005) ......................................................................21

*Molina v. Penn. Soc. Serv. Union*,
    2020 WL 2306650 (M.D. Pa. May 8, 2020) .....................................................11, 17

*Morales v. Beard*,
    2009 WL 2413425 (W.D. Pa. July 31, 2009) ......................................................20

*O'Callaghan v. Regents of the Univ. of Cal.*,
    2019 WL 6330686 (C.D. Cal. Sep. 30, 2019) .....................................................10

*Ohno v. Yasuma*,
    723 F.3d 984 (9th Cir. 2013) ..............................................................12, 13, 15, 16

*Oliver v. SEIU Local 668*,
    415 F.Supp.3d 602 (E.D. Pa. 2019) ..............................................................10, 11, 18

*Or. State Police Officers Ass'n v. Peterson*,
    979 F.2d 776 (9th Cir. 1992) ...........................................................................22, 23

*Ouzts v. Maryland Nat'l Ins. Co.*,
    505 F.2d 547 (9th Cir. 1974) (en banc) ..........................................................13, 14, 15

*Parratt v. Taylor*,
    451 U.S. 527 (1981)......................................................................................................20

*Pub. Utilities Comm'n of D.C. v. Pollak*,
    343 U.S. 451 (1952)......................................................................................................18

*Quirarte v. United Domestic Workers*,
    __ F.Supp.3d __, 2020 WL 619574 (S.D. Cal. Feb. 10, 2020)...............................10, 11, 18

*Rosebrock v. Mathis*,
    745 F.3d 963 (9th Cir. 2014) .......................................................................................22

*Roudybush v. Zabel*,
    813 F.2d 173 (8th Cir. 1987) .......................................................................................13

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) .......................................................................................8

*Seager v. United Teachers Los Angeles*,
    2019 WL 3822001 (C.D. Cal. Aug. 14, 2019)...............................................................10

*Smith v. Bieker*,
    2019 WL 2476679 (N.D. Cal. June 13, 2019) ...............................................................10

*Smith v. N.J. Educ. Ass'n*,
    425 F.Supp.3d 366 (D.N.J. 2019) ...............................................................................10

*Smith v. Teamsters Local 2010*,
    2019 WL 6647935 (C.D. Cal. Dec. 3, 2019) ...............................................................10

*Tsao v. Desert Palace, Inc.*,
    698 F.3d 1128 (9th Cir. 2012) .....................................................................................16

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) .........................................................................................6

*Winterland Concessions Co. v. Trela*,
    735 F.2d 257 (7th Cir. 1984) .......................................................................................13

**State Cases**

*Dale v. Kulongoski*,
    894 P.2d 462 (Or. 1995) ...............................................................................................3

*Goodrich v. Ford Motor Co.*,
    525 P.2d 130 (Or. 1974) .............................................................................................14

*Oregon AFSCME Council 75, Local 2936*,
    ERB Case UP-15-04, 2006 WL 5668390 ..................................................................3, 11

**Federal Statutes**

28 U.S.C. §1367...........................................................................................................23

42 U.S.C. §1983................................................................................................*passim*

**State Statutes**

ORS 165.007...........................................................................................................15, 19

ORS 165.013...........................................................................................................15, 19

ORS 243.662..............................................................................................*passim*

ORS 243.672..............................................................................................*passim*

ORS 243.676...........................................................................................................24

ORS 243.776...........................................................................................................15, 23

ORS 243.806..............................................................................................*passim*

ORS 292.055....................................................................................................10, 15, 23

ORS 652.610...........................................................................................................2, 8

ORS 652.615...........................................................................................................8, 23

**Federal Rules & Regulations**

Fed. R. Civ. P. 12(b)...........................................................................................1, 8

## L.R. 7-1 CERTIFICATION

On May 21, 2020, counsel for Defendant Service Employees International Union Local 503 ("SEIU 503" or "Union") conferred in good faith with counsel for Plaintiff about the subject of this motion.  The issue could not be resolved without the assistance of the Court.

## MOTION

Defendant SEIU 503 moves the Court to dismiss Plaintiff's Complaint.  Plaintiff's federal claims for retrospective monetary relief should be dismissed because Plaintiff fails to state a claim for relief under 42 U.S.C. §1983.  Plaintiff's claims for prospective relief should be dismissed for lack of subject matter jurisdiction because those claims fail to present a live case or controversy.  If the federal claims are dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state tort law claims.  Alternatively, the Court should dismiss the state tort law claims because they are foreclosed by ORS 243.806(10)(a).  In support of this motion, the Union relies upon Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the points and authorities below, the Declaration of Becky Johnson ("Johnson Decl.") filed concurrently herewith, and the files and record of this case.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff Margo Cash Schiewe is a former employee of the State of Oregon.  She alleges that the Union forged her signature on a union membership/dues deduction agreement and thereby caused the State of Oregon to deduct money from her pay and transmit the money to the Union without her permission.  SEIU 503 denies the allegations and contends that Plaintiff did sign the agreement.  Assuming that Plaintiff's allegations of forgery and theft are true, however,

Plaintiff has not alleged viable 42 U.S.C. §1983 claims for the violation of First Amendment or due process rights.  Instead, she must pursue state law remedies.

Simply stated, a private party's conduct that is *illegal* under state law, and that takes place without the knowledge of state officials, is not "state action," and state action is necessary for a §1983 claim.  That dispositive point aside, moreover, Plaintiff's allegations of private wrongdoing also fail to show a First Amendment violation.  The First Amendment, as interpreted in *Janus v. AFSCME Council 31*, 138 S.Ct. 2448 (2018), prohibits public employers from compelling employees to subsidize union activities.  There is no First Amendment violation when a private party (such as the Union) allegedly obtains money through fraud, in violation of state law, and without state officials' knowledge of the fraud.  Likewise, Plaintiff's allegations fail to show a due process violation.  Under the facts alleged by Plaintiff, the government's payroll office believed she had authorized the deductions.  Inadvertent deprivations caused by alleged criminal activity do not violate the Due Process Clause when, as here, the State provides adequate post-deprivation remedies.

Plaintiff also seeks prospective relief against the Union and the State Defendants to enjoin unconstitutional "policies, provisions, or actions," Complaint (Doc. 1) at p.11 ¶C (Prayer for Relief)—a formulation apparently targeting state statutes and the collective bargaining agreement between the Union and the State.  But this demand for relief does not present a live case or controversy because Plaintiff's dues deductions have terminated.

Finally, Plaintiff alleges two state law claims, for common law fraud and unauthorized wage deductions in violation of ORS 652.610.  Because Plaintiff has no viable federal claims, the Court should decline to exercise supplemental jurisdiction over her state law claims.  Alternatively, the Court should dismiss the state law claims as foreclosed by ORS

243.806(10)(a), which requires that any disputes about the validity of union dues authorizations must be first be presented to the State's Employment Relations Board.

**BACKGROUND**

I.     **Factual Background**

Plaintiff is an employee of the Oregon Department of Consumer and Business Services in a bargaining unit represented by SEIU 503.  Complaint ¶8.   Under Oregon law, union membership is voluntary.  *See, e.g.*, *Dale v. Kulongoski*, 894 P.2d 462, 464 (Or. 1995) ("With respect to compulsory union membership, there is none."); *see also id.* at 465 n.5 ("[N]o law requires anyone to join the union or pay union dues.").   Under the Oregon Public Employees Collective Bargaining Act ("PECBA"), it is a prohibited practice for a union or a public employer to coerce a public employee to become a union member.  *See* ORS 243.672(2)(a), 243.662 (making it an unfair labor practice for a public sector union to "[i]nterfere with, restrain or coerce any employee in or because of the exercise of" their right to join or not join a union); *see also see also Oregon AFSCME Council 75, Local 2936*, ERB Case UP-15-04, 2006 WL 5668390, at *15 ("ORS 243.662 … protects employees in their right to refrain from joining or participating in union activities."); ORS 243.672(1)(a), (c) (making it an unfair labor practice for a public employer to "[i]nterfere with, restrain or coerce any employee in or because of the exercise of" their right to join or not join a union or to "[d]iscriminate in regard to hiring, tenure or any terms or condition of employment for the purpose of encouraging or discouraging membership in an employee organization").

Oregon law allows public employees to voluntarily authorize dues deductions for their unions.  *See* ORS 243.806(1) ("A public employee may enter into an agreement with a labor organization that is the exclusive representative to provide authorization for a public employer to make a deduction from the salary or wages of the public employee, in the manner described in

subsection (4) of this section, to pay dues, fees and any other assessments or authorized

deductions to the labor organization or its affiliated organizations or entities."). The PECBA

allows a union to request the State to make deductions of union dues from a public employee's

pay only if the employee has authorized the deductions. *See* ORS 243.806(2) ("A public

employer shall deduct the dues, fees and any other deduction *authorized* by a public employee

under this section and remit payment to the designated organization or entity." (emphasis

added)).

      SEIU 503 and the State have a collective bargaining agreement ("CBA"), which includes

provisions governing the deduction of union dues from bargaining unit employees who authorize

such deductions. Johnson Decl. Exh. 7 (CBA 2019-2021), Art. 10, §15; *see also* Complaint ¶10.

Article 10, §15 of the CBA provides for the public employer to make only those union dues

deductions that are voluntarily "request[ed]" by an employee pursuant to a "dues deduction

authorization[]." Johnson Decl. Exh. 7 Art. 10, §15.

      Plaintiff alleges that she "has chosen not to be a union member" and was previously a

fair-share fee payer under the state law in effect prior to *Janus*.[1] Complaint ¶11. Plaintiff alleges

that, "[a]fter mandatory fair-share fee deductions ended (following the *Janus* decision)," she

"called SEIU 503 to ask about the status of her union membership and fee payments," and was

twice told she "was now required to be a member of the union." *Id.* ¶12. Plaintiff alleges that

she thereafter "received emails from SEIU 503 telling her that she needed to 'join or confirm'

her union membership in order to vote on the union contract," which emails "included a link to

---

[1] That state law, which was authorized by the U.S. Supreme Court's decision in *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977) (overruled 41 years later by *Janus*, 138 S.Ct. 2448), permitted collective bargaining agreements to require the deduction of fair share fees, also known as "payments-in-lieu-of-dues," from the pay of bargaining unit employees who chose not to join the Union. *See* ORS 243.672(1)(c) (2013).

'confirm' her status" as a union member. *Id.* ¶13. Plaintiff alleges that she recalls "visit[ing] SEIU 503's website" in response to one of these emails, but alleges that "she does not recall at any time entering her name for purposes of an electronic signature to join the union." *Id.*

Plaintiff alleges that "on or near August 25, 2019, union dues began being withdrawn from Plaintiff's salary without her knowledge or consent." *Id.* ¶14. Plaintiff elsewhere alleges that she was aware that dues were being deducted from her paychecks, but that she did not "immediately question" the deductions because she "had been informed that it was mandatory" to become a member of the union. *Id.* ¶15.

Plaintiff alleges that she sent a letter to the Union on November 5, 2019, requesting to resign her membership and to revoke her authorization for further dues deductions. *Id.* ¶16. In that same letter, Plaintiff alleges she also requested a copy of her membership and dues authorization agreement. Johnson Decl. Exh. 2. Plaintiff alleges that the Union responded by explaining that she had signed a membership and dues authorization agreement, and explaining that, pursuant to the terms of her agreement, Plaintiff was obligated to continue paying dues until August 2020. Complaint ¶16; *see also* Johnson Decl. ¶5. The Union's response included a copy of Plaintiff's August 25, 2019 union membership agreement that the Union had on file. Complaint ¶17; Johnson Decl. ¶5. That agreement states, in pertinent part, as follows:

> I hereby designate SEIU Local 503… as my desired collective bargaining agent. I also hereby authorize my employer to deduct from my wages all Union dues and other fees or assessments as shall be certified by SEIU Local 503… and to remit those amounts to such Union. This authorization/delegation is unconditional, made in consideration for the cost of representation and other actions in my behalf by the Union and is made irrespective of my membership in the Union. This authorization is irrevocable for a period of one year from the date of execution and from year to year thereafter unless not less than thirty (30) and not more than forty-five (45) days prior to the end of any annual period or the termination of the contract between my employer and the Union, whichever occurs first, I notify the Union and my employer in writing, with my valid signature, of my desire to revoke this authorization.

Johnson Decl. Exh. 1.[2]  Plaintiff's 2019 membership agreement was electronically signed at 6:03 p.m. on August 25, 2019 from an IP address in Molalla, Oregon.  *Id.*; *see also* Johnson Decl. ¶4. SEIU 503's records reflect that Plaintiff resides in Molalla, Oregon.  Johnson Decl. ¶4

Plaintiff alleges that "she does not recall at any time entering her name for purposes of an electronic signature to join the union." Complaint ¶13.  On this basis, Plaintiff alleges that she "did not sign this agreement" and that the Union therefore "forged" her signature.  *Id.* ¶¶14, 30.

Plaintiff further alleges that her attorneys subsequently wrote to SEIU 503; SEIU 503's records reflect that it received a letter from Plaintiff's counsel dated February 21, 2020 stating that Ms. Cash Schiewe did "not recall" signing the membership agreement and requesting that the Union cease further dues deductions.  Complaint ¶20; Johnson Decl. ¶7 & Exh. 4.  The Union responded on March 17, 2020, explaining that Ms. Cash Schiewe had rescinded her request to resign membership in November 2019 and attaching a letter the Union had sent to her on November 18, 2019 confirming the same.  Complaint ¶21; Johnson Decl. ¶8 & Exhs. 4-6. The Union's letter further stated that Ms. Cash Schiewe had signed the 2019 Membership Agreement at 6:03 p.m. on August 25, 2019 from an IP address in Molalla, Oregon in response to an email that SEIU 503 had sent to her on that same date, which SEIU 503's records indicated Ms. Cash Schiewe had opened at 6:00 p.m.  Johnson Decl. ¶8 & Exhs. 5-6.  Plaintiff alleges that the data printout of her 2019 Membership Application "does not contain sufficient information to authenticate the membership form." Complaint ¶18.

---

[2] The accompanying Declaration of Becky Johnson attaches as an exhibit Plaintiff's SEIU 503 membership agreement and other relevant documents that are incorporated by reference into the Complaint.  *See* Complaint ¶¶1, 12-19, 30; *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").  In any event, extrinsic evidence may be presented as part of an Fed. R. Civ. P. 12(b)(1) motion.  *See infra* at 8.

After Plaintiff alleged in this lawsuit that she never signed the 2019 Membership

Agreement, the Union notified Plaintiff's State employer to cease making any dues deductions

from her pay.  Johnson Decl. ¶9.  No dues have been deducted from Plaintiff's pay since March

2020.  *Id.*

## II.   <u>Plaintiff's Lawsuit</u>

On March 30, 2020, Plaintiff filed this lawsuit against SEIU 503 and the Oregon

Department of Administrative Services ("the Department"), as well as Katy Coba, in her official

capacity as the Director of the Department (together with the Department, "the State").  Plaintiff

alleges two causes of action under 42 U.S.C. §1983.  Both §1983 causes of action turn on the

allegation that "taking Ms. Cash Schiewe's money without her consent and pursuant to a forged

membership agreement have caused Ms. Cash Schiewe to suffer loss of income, emotional

distress, and other damages."  Complaint ¶30; *see also id.*, ¶31 (Count I; incorporating all prior

allegations), ¶38 (Count II; same).

In Count I, Plaintiff alleges that the Union and the State violated her First Amendment

rights by deducting dues from her pay "without her knowing, voluntary and intelligent consent."

*Id.* ¶32.  She further alleges that the dues deductions violated her rights not to associate with the

Union or to support its petitioning and speech.  *Id.* ¶33; *see also id.* ¶¶32-37.  In Count II,

Plaintiff alleges that the Union and the State violated her First Amendment and due process

rights by deducting union dues in the absence of "adequate procedural safeguards."  *Id.* ¶40; *see*

*also id.* ¶¶39-44.

In Count III, Plaintiff asserts a state law fraud claim against the Union.  *Id.* ¶¶45-53.  She

alleges that the Union unlawfully obtained money from her based on "a false and material

misrepresentation of fact" to the State: namely, that Plaintiff was a member of SEIU 503. *Id.* ¶45; *see also id.* ¶¶45-53.

In Count IV, Plaintiff alleges a state law claim against the State under ORS 652.615 for making unauthorized deductions from her paycheck in violation of ORS 652.610. *Id.* ¶¶54-60. She alleges that, because she was not a member of SEIU 503, the deduction of Union membership dues from her paychecks was not authorized under either ORS 652.610 (3)(b) or (c). *Id.* ¶57.

Plaintiff seeks prospective and retrospective relief, including declarations that Defendants violated her First Amendment rights; an injunction to prohibit Defendants from "maintaining and enforcing any of the policies, provisions, or actions declared unconstitutional or illegal including the deduction of union dues or fees from Plaintiff's wages without her consent"; and a refund of dues deducted from her wages, together with nominal damages and punitive damages; and attorneys' fees and costs. *Id.* at pp. 11-12 (Prayer for Relief).

## LEGAL STANDARD

This motion is brought pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). A Rule 12(b)(1) motion addresses the Court's subject matter jurisdiction. On such a motion, the Court may consider "evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment," and "need not presume the truthfulness of the plaintiff's allegations" concerning jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The moving party should prevail "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).

A Rule 12(b)(6) motion should be granted if the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing a motion to dismiss, the Court may consider the complaint's allegations as well as "materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

## ARGUMENT

### I.    Plaintiff's §1983 claims for retrospective relief should be dismissed.

Plaintiff seeks retrospective relief from the Union pursuant to 42 U.S.C. §1983 on the theory that the Union violated her First Amendment and procedural due process rights.[3] The gravamen of Plaintiff's claim is her allegation that the Union "forged" her signature on the August 25, 2019 membership/dues authorization agreement and thereby caused the State to deduct dues from her pay that she never authorized. Even accepting that allegation as true, however, Plaintiff has not stated a §1983 claim and must instead pursue state law remedies.

As an initial matter, and by itself dispositive, a private defendant can be held liable under §1983 only for engaging in conduct "under color of" state law, and not for conduct undertaken *in violation of* state law. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982); *Collins v. Womancare, Inc.*, 878 F.2d 1145, 1151 (9th Cir. 1989). Plaintiff's allegation of private forgery in violation of Oregon law therefore alleges at most a claim under *state* law, not a claim under §1983. *See Mendez v. Cal. Teachers Ass'n*, 419 F.Supp.3d 1182, 1187 (N.D. Cal. 2020), appeal

---

[3] Any claim for damages against the State would be barred by the Eleventh Amendment.

pending (dismissing analogous §1983 claims for lack of state action, on the ground that, "[t]o the extent plaintiffs allege that the Union defendants misinformed them about their legal obligations to join the union or pay membership dues, their claims would be against the Union defendants *under state law*" (emphasis added)); *see also infra* at 13-15.[4]

Moreover, SEIU 503 is a private entity and does not qualify as a "state actor" for purposes of §1983 merely because of the State's ministerial role in deducting authorized union dues pursuant to ORS 243.806, or its pre-2020 predecessor, ORS 292.055. *See, e.g.*, *Belgau v. Inslee*, 359 F.Supp.3d 1000, 1013-15 (W.D. Wash. 2019), appeal pending & oral arg. held (Dec. 10, 2019) (state's role in deduction of union dues pursuant to membership agreement authorizing

---

[4] Plaintiff does not appear to allege that her union membership agreement, including the commitment to pay dues for a fixed period of time, would be invalid if she had signed the agreement. Every court to reach that issue has held that such private agreements between unions and their members are enforceable and do not infringe First Amendment rights. *See Fisk v. Inslee*, 759 F. App'x 632, 633 (9th Cir. 2019) ("Appellees' deduction of union dues in accordance with the membership cards' dues irrevocability provision does not violate Appellants' First Amendment rights."); *see also Durst v. Oregon Educ. Ass'n*, __ F.Supp.3d __, 2020 WL1545484, at *3-4 (D. Or. Mar. 31, 2020); *Bennett v. AFSCME, Council 31, AFL-CIO*, __F.Supp.3d __, 2020 WL 1549603, at *3-5 (C.D. Ill. Mar. 31, 2020); *Loescher v. Minn. Teamsters Pub. & Law Enf't Emps.' Union, Local No. 320*, __ F.Supp.3d __, 2020 WL 912785, at *6-8 (D. Minn. Feb. 26, 2020), appeal pending; *Few v. United Teachers Los Angeles*, 2020 WL 633598 at *6 (C.D. Cal. Feb. 10, 2020), appeal pending; *Quirarte v. United Domestic Workers*, __ F.Supp.3d __, 2020 WL 619574 at *5-6 (S.D. Cal. Feb. 10, 2020), appeal pending; *Grossman v. Hawaii Gov't Emps. Ass'n*, __ F.Supp.3d__, 2020 WL 515816, at *6 (D. Haw. Jan. 31, 2020), appeal pending; *Hendrickson v. AFSCME Council 18*, __F.Supp.3d __, 2020 WL 365041 at *5-6 (D.N.M. Jan. 22, 2020), appeal pending; *Mendez*, 419 F.Supp.3d at 1186; *Hernandez v. AFSCME California*, 424 F.Supp.3d 912, 922-24 (E.D. Cal. 2019), appeal pending; *Smith v. Teamsters Local 2010*, 2019 WL 6647935, at *8-*9 (C.D. Cal. Dec. 3, 2019), appeal pending; *Smith v. N.J. Educ. Ass'n*, 425 F.Supp.3d 366, 373-74 (D.N.J. 2019), appeal pending; *Oliver v. SEIU Local 668*, 415 F.Supp.3d 602, 606-08 (E.D. Pa. 2019), appeal pending; *O'Callaghan v. Regents of the Univ. of Cal.*, 2019 WL 6330686 at *4-5 (C.D. Cal. Sep. 30, 2019), appeal pending; *Anderson v. SEIU 503*, 400 F.Supp.3d 1113, 1115-17 (D. Or. 2019), appeal pending; *Seager v. United Teachers Los Angeles*, 2019 WL 3822001, at *2 (C.D. Cal. Aug. 14, 2019), appeal pending; *Cooley v. Cal. Statewide Law Enf't Ass'n*, 385 F.Supp.3d 1077, 1079-80 (E.D. Cal. 2019), appeal pending; *Smith v. Bieker*, 2019 WL 2476679, at *2 (N.D. Cal. June 13, 2019), appeal pending; *Crockett v. NEA-Alaska*, 367 F.Supp.3d 996, 1007-08 (D. Alaska 2019), appeal pending; *Belgau v. Inslee*, 359 F.Supp.3d 1000, 1017 (W.D. Wash. 2019), appeal pending and oral arg. held (Dec. 10, 2019).

such deductions is merely ministerial and does not make the union as state actor); *accord*

*Hendrickson*, 2020 WL 365041 at *7-8; *Quirarte*, 2020 WL 619574 at *3-5; *Oliver*, 415

F.Supp.3d at 611-12; *Molina v. Penn. Soc. Serv. Union*, No. 1:19-CV-00019, 2020 WL 2306650,

at *9-10 (M.D. Pa. May 8, 2020); *see also infra* at 15-18.

Equally to the point, even setting aside the inadequacy of Plaintiff's state action

allegations, and assuming Plaintiff's allegations of forgery are true, she did not suffer a violation

of her First Amendment rights.  *See infra* at 18-20.  The First Amendment protects against

government compulsion, not private theft.  Nor did Plaintiff suffer a violation of her procedural

due process rights.  *See infra* at 20-21.  Plaintiff's allegations do not show that the State was

aware of the alleged forgery, and inadvertent deprivations of property caused by criminal activity

do not violate procedural due process where the State provides post-deprivation state law

remedies.

That Plaintiff's allegations fail to state a claim for relief under §1983 does not leave her

without a remedy.  Under the PECBA, a labor organization that "receives payment in violation

of the requirements of [ORS 243.806]," including by means of a deduction without the proper

authorization, "is liable to the public employee for actual damages in an amount not to exceed

the amount of the unauthorized deductions," ORS 243.806(10)(b), and any dispute regarding the

"existence, validity or revocation of an authorization for the deduction[] and payment" of a

public employee's union dues must be resolved through an unfair labor practice proceeding

before the ERB, ORS 243.806(10)(a).  Moreover, the PECBA makes it unlawful for a union to

"restrain or coerce employees" in the exercise of the rights guaranteed by the Act, ORS

243.672(1)(a), which include the rights to "form, join and participate" in the activities of labor

organizations or to decline to participate in such activities.  ORS 243.662; *see also Oregon*

*AFSCME Council 75*, 2006 WL 5668390 at *15 ("ORS 243.662 also protects employees in their right to refrain from joining or participating in union activities.") (quotation omitted).

### A.    Plaintiff fails to allege the state action necessary for a §1983 claim.

"'[M]ost rights secured by the Constitution are protected only against infringement by governments.'" *Ohno v. Yasuma*, 723 F.3d 984, 993 (9th Cir. 2013) (quoting *Lugar*, 457 U.S. at 936-37) (alteration in original); *see also Manhattan Cmty. Access Corp. v. Halleck*, 139 S.Ct. 1921, 1928 (2019) (First Amendment addresses government restraints on freedom of speech and association, not purely private conduct).  A plaintiff seeking to challenge a private party's conduct under §1983 must therefore show that "'the conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State,'" *i.e.*, that the private party's conduct is "state action." *Ohno*, 723 F.3d at 993 (quoting *Lugar*, 457 U.S. at 936-37); *see also Bain v. Cal. Teachers Ass'n*, 156 F.Supp.3d 1142, 1149-50 (C.D. Cal. 2015) (same).  If the conduct "is not so attributable, then there is no 'state action' and no violation" of the First Amendment and no §1983 claim. *Ohno*, 723 F.3d at 993.

The Supreme Court and Ninth Circuit apply two-part test to determine whether a plaintiff states a §1983 claim against a private actor: first, "'whether the claimed deprivation has resulted from the exercise of a right or privilege having its source in state authority,'" and second, whether "'under the facts of this case, … [the] private parties … may be appropriately characterized as "state actors."'" *Bain*, 156 F.Supp.3d at 1149 n.6 (quoting *Lugar*, 457 U.S. at 939).  "Both elements under *Lugar* must be met for there to be state action." *Collins*, 878 F.2d at 1151 (citing *Lugar*, 457 U.S. at 937-39).  In this case, neither *Lugar* element is satisfied.

1.      **Private action in violation of state law is not action under color of law.**

To satisfy the first step of the state action test, the Plaintiff must show that the private action was carried out *pursuant* to "state policy," rather than *contrary to* state policy. *Collins*, 878 F.2d at 1151 (quoting *Roudybush v. Zabel*, 813 F.2d 173, 176 (8th Cir. 1987)).  At this step, a plaintiff must show that "the claimed constitutional deprivation resulted from 'the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.'"  *Ohno*, 723 F.3d at 994 (quoting *Lugar*, 457 U.S. at 937).  It is axiomatic that "'private misuse of a state statute'" or other private conduct that *violates* state law "'does not describe conduct that can be attributed to the State.'"  *Collins*, 878 F.2d at 1152 (quoting *Lugar*, 457 U.S. at 941); *see also, e.g.*, *Ouzts v. Maryland Nat'l Ins. Co.*, 505 F.2d 547, 553-54 (9th Cir. 1974) (en banc) (private party was not acting under color of state law where an "applicable statute expressly prohibits and makes criminal" the private party's conduct)); *Hassett v. Lemay Bank & Trust Co.*, 851 F.2d 1127, 1129-30 (8th Cir. 1988) (misuse of state statute by private actor not actionable under §1983); *Roudybush*, 813 F.2d at 177 (same); *Winterland Concessions Co. v. Trela*, 735 F.2d 257, 262 (7th Cir. 1984) (same).

Thus, in *Collins*, where the plaintiff protesters argued that their constitutional rights were violated when employees of a private clinic placed the plaintiffs under citizens' arrest without following the state law that authorizes such arrests, the Ninth Circuit held that the plaintiffs' suit failed the first step of *Lugar* because the clinic employees' actions "'could not be ascribed to any governmental decision; rather [the clinic employees] were acting *contrary to the relevant policy articulated by the State*.'"  *Collins*, 878 F.2d at 1153 (quoting *Lugar*, 457 U.S. at 940) (emphasis added).  Similarly, as *Lugar* explained, by alleging that the private defendants *unlawfully* deprived the plaintiff of his property without due process, the plaintiff there effectively admitted

that the defendants' "conduct ... could not be ascribed to any governmental decision" and that

they "were acting contrary to the relevant policy articulated by the State." 457 U.S. at 940; *see*

*also id.* at 941 (holding that an allegation of "private misuse" or abuse of a state statutory scheme

does not give rise to a §1983 claim). And in *Ouzts*, the plaintiff failed to establish the state

action necessary for a §1983 cause of action where he claimed that private bail bondsmen had

"allegedly represented" that they were acting under the authority of Los Angeles County. 505

F.2d at 554. For the same reasons, the *Mendez* court ruled that a plaintiff's allegations that a

union had misrepresented to bargaining unit employees the implications of signing a union

membership card and agreeing to dues deductions, in violation of state law, failed to state a claim

under §1983. 419 F.Supp.3d at 1187.

Under these authorities, Plaintiff's §1983 claims against the Union fail at the first step of

the state action analysis. Here, the crux of Plaintiff's complaint is her allegation that the Union

"falsified" her signature on her membership card and, as a result, collected dues from her without

authorization. Complaint ¶1.[5] However, Oregon law and the collective bargaining agreement

only allow SEIU 503 to request the State to make deductions of union dues from employees' pay

only if the employee has authorized the deductions. *See* ORS 243.806(2) (effective Jan. 1 2020)

("A public employer shall deduct the dues, fees and any other deduction *authorized by a public*

*employee* under this section and remit payment to the designated organization or entity.")

---

[5] *See* Complaint ¶19 (alleging Plaintiff "did not sign" the 2019 membership and dues
authorization agreement), *id.* ¶1 (alleging Plaintiff's membership card was "falsified"), *id.* ¶30
("SEIU 503's action in taking Ms. Cash Schiewe's money without her consent and pursuant to a
forged membership agreement have caused Ms. Cash Schiewe to suffer loss of income,
emotional distress, and other damages."). It bears emphasis that, although Plaintiff does allege
that she "did not sign" the membership and dues authorization agreement, *id.* ¶19, she elsewhere
states merely that she "does not recall" signing it. *Id.* ¶13. To the extent Plaintiff "simply ha[s]
no memory of" executing the agreement, that evidence would be insufficient to establish that she
did not sign the agreement. *Goodrich v. Ford Motor Co.*, 525 P.2d 130, 133 (Or. 1974).

(emphasis added);[6] *see also* Johnson Decl. Exh. 7 (Collective Bargaining Agreement 2019-2021), Art. 10, §15(a) (requiring the employer to make union dues deductions only "[u]pon written, electronic or recorded voice request from an employee").  Indeed, Oregon law makes it a felony to commit forgery "with [the] intent to injure or defraud."  ORS 165.007, 165.013.  By alleging forgery of a union dues deduction agreement, Plaintiff necessarily claims that the Union was "'acting contrary to the relevant policy articulated by the State.'" *Collins*, 878 F.2d at 1153 (quoting *Lugar*, 457 U.S. at 940) (emphasis omitted).  Therefore, she fails to state claims under §1983 in either Count I or Count II.  *See id.*; *Ouzts*, 505 F.2d at 553-54; *Mendez*, 419 F.Supp.3d at 1187.

### 2.   SEIU 503 is not a state actor.

Even if Plaintiff's allegations of illegality were not fatal to her §1983 claims (which they are), her §1983 claims also fail the second step of the *Lugar* test, which requires showing that "the party charged with the deprivation could be described in all fairness as a state actor."  *Ohno*, 723 F.3d at 994.  Courts in the Ninth Circuit consider four tests to determine whether the party can be described as a "state actor" under *Lugar*: "(1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test."  *Bain*, 156 F.Supp.3d at 1150 (citing *Ohno*, 723 F.3d at 995).  The "most relevant" of these are the "public function" and "joint action tests," as these tests "largely subsume" the other two.  *Ohno*, 723 F.3d at 995 & n.13.  The "public function" test "treats private actors as state actors when they perform a task or exercise powers traditionally reserved to the government," while the "joint action" test "focuses

---

[6] ORS 243.776 and 292.055(3), referenced by Plaintiff in her Complaint at ¶32, were repealed effective January 1, 2020.  *See* ORS 243.806 (effective Jan. 1, 2020).  In any event, the now-repealed language of §292.055(1) permitted the deduction of union dues only "[u]pon receipt of the request in writing of [an] … employee so to do."  The now-repealed ORS 243.776 stated that the union dues deduction procedure in ORS 292.055 applied to employees of all public employers.

on 'whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights.'" *Id.* at 996 (quoting *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012)).

In this case, the source of Plaintiff's alleged harm was the Union, not the State. "Unions are not state actors; they are private actors." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009). There is no State policy that compels nonmembers to pay union dues. To the contrary, Oregon law expressly *forbids* the State from interfering in employee decisions whether to become union members and pay membership dues.[7] At all relevant times, the procedures for union dues deduction set forth in Oregon law have prevented the State from becoming entwined in the terms of private dues payment agreements between employees and their unions. *See supra* n.6; *see also* ORS 243.806(7) (public employer shall rely on list provided by the union identifying employees "who have provided authorization" for dues deductions to make the requested deductions). Rather than grounding her § 1983 claims in government action, Plaintiff traces her alleged harm solely to the Union's alleged falsification of her membership agreement, without the knowledge or participation of any government officials. Nowhere in Plaintiff's complaint does she allege that her State employer was aware that she believed her signature on the 2019 membership authorization was forged. *See*

---

[7] *See* ORS 243.662 ("Public employees have the right to form, join and participate in the activities of labor organizations of their own choosing for the purpose of representation and collective bargaining with their public employer on matters concerning employment relations."), 243.672(1)(a) (making it an unfair labor practice for a public employer to "[i]nterfere with, restrain or coerce employees in" the exercise of rights guaranteed by §243.662), 243.672(1)(j) (making it an unfair labor practice for a public employer to "[a]ttempt to influence an employee to resign from or decline to obtain membership in a labor organization"), 243.672(1)(k) (making it an unfair labor practice for a public employer to "[e]ncourage an employee to revoke an authorization for [dues] deductions").

Complaint ¶19 (alleging only that Plaintiff "informed SEIU 503 of th[e] fact" that she allegedly "did not sign" the dues authorization agreement).

The mere fact that the State transmitted dues payments to SEIU 503 as a consequence of the Union's allegedly illegal conduct does not give rise to a §1983 claim against SEIU 503 on a joint action or any other cognizable state action theory. Even where a private party's alleged actions are *consistent* with the law (rather than *contrary* to the law as alleged here), "[t]hat the State responds to such actions by adjusting" its own conduct (*e.g.*, by deducting dues) "does not render it *responsible* for those actions." *Blum v. Yaretsky*, 457 U.S. 991, 1005 (1982) (emphasis in original); *see also, e.g.*, *Knox v. Westly*, 2006 WL 2374763, at *3-5 (E.D. Cal. Aug. 16, 2006) (union members could not challenge public sector union dues increase under §1983 because union was not state actor); *Belgau*, 359 F.Supp.3d at 1013-15. The same is doubly true for unlawful actions, where the alleged harm to the plaintiff cannot even be traced to a government policy. As *Blum* makes plain, the government has no duty to investigate the underlying bona fides of each private decision to which it responds. *See Blum*, 457 U.S. at 1005-06 (holding that state's adjustment of Medicaid benefits levels in response to private medical decisions about appropriate level of care does not give rise to state action). Accordingly, the State's "ministerial obligation to deduct dues" (when those dues are properly authorized, contrary to Plaintiff's allegations in this case) "does not transform" the Union's allegedly unlawful behavior "into state actions." *Bain v. Cal. Teachers Ass'n*, 2016 WL 6804921, at *7 (C.D. Cal. May 2, 2016), *appeal dismissed as moot*, 891 F.3d 1206 (9th Cir. 2018); *see also Molina*, 2020 WL 2306650, at *10 ("In performing the purely ministerial function of deducting dues from [a former union member plaintiff's] paycheck and transferring them to the union on [the plaintiff's] behalf, the [state defendant] was not performing a state action because the source of the action is [the former

member's] contract with the union, not the state."); *accord Belgau*, 359 F.Supp.3d at 1013-15;

*Hendrickson*, 2020 WL 365041 at *7-8; *Quirarte*, 2020 WL 619574 at *3-5; *Oliver*, 415

F.Supp.3d at 611-12.

**B.    Plaintiff fails to allege a First Amendment violation.**

While Plaintiff's failure to allege the requisite state action to support her §1983 claims is

dispositive, Plaintiff's Count I also fails for the independent reason that she has not alleged any

violation of the First Amendment.

As just discussed, the First Amendment is concerned only with government action, not

private action.  *See, e.g.*, *Pub. Utilities Comm'n of D.C. v. Pollak*, 343 U.S. 451, 461 (1952)

(First Amendment "appl[ies] to and restrict[s] only the … Government and not private persons");

*Manhattan Cmty. Access Corp.*, 139 S.Ct. at 1926, 1928 (2019) (same).  *Janus* involved

government policies that compelled public employees to financially support a union.  138 S.Ct.

at 2459-60.  Here, Oregon law does not compel any such financial support; to the contrary, it

makes union membership and the payment of dues voluntary and expressly makes it unlawful for

public employers to coerce employees to join or support unions.  *See* ORS 243.662,

243.672(1)(a).

The crime (and tort) of forgery or fraud by a private party does not give rise to a First

Amendment violation; there is no First Amendment right not to be the victim of private crimes or

torts.  There is, accordingly, no First Amendment violation when a union allegedly obtains dues

payments by falsifying a member's signature, any more than there would be a First Amendment

violation if a union representative (or any other private party) broke into the state payroll office

(or hacked its computer system) and stole an employee's paycheck.

For the same reasons, there is no merit to Plaintiff's contention that state law or the CBA's dues deduction language lacked sufficient procedural safeguards to protect her First Amendment rights.  Complaint ¶¶38-44.  Plaintiff has not stated any infringement of her First Amendment rights in the first place.  She does not allege that she was compelled by state law to pay any money to the Union as a condition of public employment, but rather alleges that the Union fraudulently obtained money from her through forgery in violation of state law, without the knowledge of the State, which does not implicate the First Amendment.  *Id.* ¶¶1, 12-19, 30.[8] The U.S. Constitution does not require the States to invent procedures to prevent all potentially unlawful conduct by private parties before it occurs.  *See, e.g.*, *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982) (constitution does not require government to prevent private crimes); *Ketchum v. Alameda County*, 811 F.2d 1243, 1247 (9th Cir. 1987) (same).

Moreover, while it is dispositive here that the First Amendment is not concerned with private theft or fraud, it bears emphasis that state law provides ample protections against the conduct of which Plaintiff complains.  She does not allege any facts to show otherwise.  As noted above, Oregon has a statute that makes forgery a felony.  *See* ORS 165.007, 165.013. Moreover, state law explicitly bars unions from interfering with public employees' right not to be union members, and provides a specialized state administrative agency, the ERB, to hear employees' claims of union violations of that right and to prosecute complaints.  ORS 243.672(1)(a) 243.672(2)(c), 243.806(10).  Plaintiff does not allege that she ever complained to

---

[8] By contrast, in *Chicago Teachers Union, Local No. 1 v. Hudson*, 475 U.S. 292 (1986), the State's requirement that non-members of a union pay agency fees for collective bargaining representation was an impingement on First Amendment rights, so the State was required to have procedures to minimize the impingement by enabling non-members to object to paying for the non-mandatory portion of the agency fees.

the ERB.  As such, there is no plausible claim that Oregon condones the forgery of union

membership cards or has no procedures to prevent and redress unauthorized payroll deductions.

>    **C.    Plaintiff fails to allege a procedural due process violation.**

While Plaintiff's failure to allege the requisite state action to support her §1983 claims is

dispositive, Plaintiff's Count II also has not stated any claim for violation of her procedural due

process rights.  It is well established that the government does not violate a plaintiff's procedural

due process rights when "random and unauthorized" conduct causes a deprivation of the

plaintiff's property, as long as the government provides adequate post-deprivation remedies.  *See*

*Parratt v. Taylor*, 451 U.S. 527, 541 (1981) (no procedural due process violation for negligent

loss of prisoner's property); *Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("[T]he Due Process

Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or

injury to life, liberty, or property." (emphasis in original)); *Hudson v. Palmer*, 468 U.S. 517, 533

(1984) (no procedural due process violation for *unauthorized* harm to plaintiff by a public

employee, even if *intentional*, where state law provided adequate post-deprivation remedies); *see*

*also Bretz v. Kelman*, 773 F.2d 1026, 1030 (9th Cir. 1985) (en banc) ("where the deprivation is

both of a relatively insignificant interest and is utterly unpredictable, a postdeprivation remedy is

the state's one opportunity to provide due process").

Thus, even if a government payroll clerk had illegally forged Plaintiff's name on a union

dues deduction authorization, Plaintiff would have no procedural due process claim.  *See, e.g.*,

*N.C. ex rel. Haywood v. Barrington*, 256 F.Supp.2d 452, 463-64 (M.D.N.C. 2003) (holding that

government employee's alleged forgery of plaintiff's signature on form consenting to forfeiture

of property did not give rise to a procedural due process claim under §1983 where adequate post-

deprivation remedies were available); *Morales v. Beard*, 2009 WL 2413425 at *4 (W.D. Pa. July

31, 2009) (prison official's alleged forgery of prisoner's signature on withdrawal slip from his inmate account did not give rise to procedural due process claim where adequate post-deprivation remedies were available).

Just as the government is not required by the Due Process Clause to anticipate and prevent the random and unauthorized acts of its own employees, the government also need not anticipate and eliminate all risk of random, unauthorized acts by *private* actors that might result in the short-term loss of property, as long as adequate post-deprivation remedies are available. Thus, a prisoner who alleged "that the prison allowed other prisoners to withdraw money from his prison account by fraud and/or forgery" failed to state a procedural due process claim where post-deprivation remedies remained available. *Mills v. Curry*, 127 F. App'x 342, 342-43 (9th Cir. 2005) (citing *Hudson*, 468 U.S. at 533). Similarly, a homeowner whose neighbor obtained a city tree removal permit based on alleged misrepresentations that the tree was located on the neighbor's side of the property line failed to state a procedural due process claim against city officials for removing the tree. *Elena v. Municipality of San Juan*, 677 F.3d 1, 10 (1st Cir. 2012).

Plaintiff's allegations here show that the State deducted union dues from her paychecks only because the State payroll office believed that she had authorized the deductions, as State law required. If, as Plaintiff alleges, her dues deduction authorization was forged and the deductions should not have been made, such inadvertent or negligent deprivations of property that result from random and unpredictable private criminal acts do not violate procedural due process, so long as the State provides adequate post-deprivation remedies. Here the State provides adequate post-deprivation remedies. *See supra* at 11-12.

II.   **Plaintiff's demands for prospective relief fail to present a live case or controversy.**

In addition to seeking retrospective relief, Plaintiff also seeks a prospective relief to enjoin Defendants from "maintaining and enforcing any of the policies, provisions, or actions declared unconstitutional or illegal including the deduction of union dues or fees from Plaintiff's wages without her consent."  Complaint at p.11 ¶C (Prayer for Relief).  There is no live case or controversy with respect to this demand for prospective relief because Plaintiff's dues deductions already ended, and she faces no reasonable likelihood of becoming the victim of forgery in the future.  *See* Johnson Decl. ¶¶9-11.

A plaintiff in federal court must establish Article III jurisdiction for each form of relief that the plaintiff seeks.  *Davis v. FEC*, 554 U.S. 724, 734 (2008).  A claim for relief does not present a justiciable case or controversy "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."  *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (citation omitted).  "If an event occurs that prevents the court from granting effective relief, the claim is moot and must be dismissed."  *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997) (citation omitted).  Here, Plaintiff's dues deductions were terminated in March 2020 after she claimed she had not signed membership agreement. Johnson Decl. ¶9.

Any threat of future harm to Plaintiff from unauthorized deductions is far too speculative to establish a live case or controversy.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 108-9 (1983); *Or. State Police Officers Ass'n v. Peterson*, 979 F.2d 776, 777-78 (9th Cir. 1992).  The Supreme Court held in *Lyons* that a person placed in an illegal chokehold pursuant to an official police department policy lacked standing to seek prospective relief against that policy because it was too "speculative" for him to assert he would be arrested and choked again.  461 U.S. at 109.

Likewise here, it would be "no more than speculation," *id*. at 108, for Plaintiff to claim that she

is likely again to fall victim of alleged forgery of a union membership agreement.  It cannot be

presumed that SEIU 503 would engage in criminal conduct.  *See Or. State Police Officers Ass'n*,

979 F.2d at 778.

Union dues deductions are clearly identified on employee paystubs as being made to

"SEIU."  Johnson Decl. ¶11.  Indeed, Plaintiff admits she was aware that union membership dues

were being taken from her paychecks.  Complaint ¶¶14-15.  Thus, it is unlikely that anyone

would commit forgery to obtain unauthorized deductions that Plaintiff would immediately

discover.  Moreover, in light of Plaintiff's allegation that her membership card was forged, SEIU

503 has programed its computer system to provide an alert to the Union's legal department if any

person attempts in the future to re-enroll Plaintiff as a union member, to ensure additional review

of any such request before any action is taken.  Johnson Decl. ¶10.  As such, Plaintiff cannot

show a likelihood of future dues deductions based on forgery or fraud, and she lacks standing to

seek prospective relief based on speculation.[9]

## III.    Plaintiff's state law claims should be dismissed.

In addition to §1983 claims, Plaintiff also asserts a state law cause of action against SEIU

503 for fraud and against the State under ORS 652.615 for making unauthorized deductions.

Complaint ¶¶45-60.  Those causes of action are brought solely pursuant to the Court's

supplemental jurisdiction under 28 U.S.C. §1367.  *Id.* ¶4.  If the Court dismisses the §1983

claims, it should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

*See* 28 U.S.C. §1367(c)(3) ("district courts may decline to exercise supplemental jurisdiction

---

[9] Plaintiff's claim for an injunction against ORS 243.776 and 292.055, Complaint ¶32, is also
moot for the independent reason that those statutes were repealed effective January 1, 2020, and
replaced by a different provision, ORS 243.806.

over a claim … if … the district court has dismissed all claims over which it has original

jurisdiction"); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("when the federal-

law claims have dropped out of the lawsuit in its early stages and only state-law claims remain,

the federal court should decline the exercise of jurisdiction by dismissing the case without

prejudice").

Alternatively, the Court should dismiss the state law claims as foreclosed by ORS

243.806(10)(a), which provides that any dispute regarding the "existence, validity or revocation

of an authorization for the deduction[] and payment" of a public employee's union dues "shall be

resolved through an unfair labor practice proceeding" before the Oregon Employment Relations

Board.  The statute further provides that a labor organization that "receives payment in violation

of the requirements of [ORS 243.806]," including by means of a deduction without the proper

authorization, "is liable to the public employee for actual damages in an amount not to exceed

the amount of the unauthorized deductions." ORS 243.806(10)(b).  The Board may also issue

cease and desist orders and award attorney's fees and civil penalties in unfair labor practice

proceedings.  ORS 243.676.

## CONCLUSION

For the foregoing reasons, Plaintiff's §1983 claims should be dismissed.  The Court

should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

DATED:  May 29, 2020                    Respectfully submitted,

                                        By: *s/  Scott A. Kronland*
                                            Scott A. Kronland

                                        SCOTT A. KRONLAND
                                        REBECCA C. LEE

Altshuler Berzon LLP

JAMES S. COON
Thomas, Coon, Newton & Frost

*Attorneys for Defendant Service Employees*
*International Union Local 503*