IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MARGO CASH SCHIEWE**, | Case No. 3:20-cv-00519-JR |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 503**, a labor organization, **OREGON DEPARTMENT OF ADMINISTRATIVE SERVICES**, **KATY COBA**, in her official capacity as Director of the Oregon Department of Administrative Services, | |
| Defendants. | |

**IMMERGUT, District Judge.**

Before the Court is Defendant Service Employees International Union Local 503's

Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), ECF 15, and

Defendants Oregon Department of Administrative Services and Katy Coba's Motion to Dismiss

pursuant to Fed. R. Civ. P. 12(b)(1), ECF 19. On July 23, 2020, Magistrate Judge Jolie A. Russo

issued her Findings and Recommendation ("F&R"), in which she recommended that Defendants'

motions should be granted and this case should be dismissed with leave to refile in state court.

PAGE 1 – OPINION AND ORDER

ECF 38. Plaintiff filed objections to the F&R, to which Defendants responded. ECF 40; ECF 42;

ECF 43. After de novo review of the F&R, objections, and responses, this Court adopts the F&R

as explained in the following supplemental analysis.

## STANDARDS

Under the Federal Magistrates Act ("Act"), as amended, the court may "accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge."

28 U.S.C. § 636(b)(1). If a party files objections to a magistrate judge's F&R, "the court shall

make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made." *Id.*; *see also* Fed. R. Civ. P. 72(b)(3). However,

the court is not required to review, de novo or under any other standard, the factual or legal

conclusions of the F&R to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140,

149–50 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Nevertheless, the Act "does not preclude further review by the district judge, sua sponte,"

whether de novo or under another standard. *Thomas*, 474 U.S. at 154.

## DISCUSSION

This Court adopts the F&R's summary of the allegations in the Complaint. ECF 38 at 2–

4. The F&R found that Plaintiff failed to state a claim under 42 U.S.C. § 1983 against Service

Employees International Union Local 503 ("SEIU 503") because it was not acting under the

color of state law in authorizing union dues deductions from Plaintiff's paycheck. *Id.* at 10–12.

The F&R also concluded that the court lacked subject matter jurisdiction over Plaintiff's claims

for equitable relief against SEIU 503, the Oregon Department of Administrative Services and

Katy Coba (collectively, "the State"). *Id.* at 6–10. Finally, the F&R recommended that Plaintiff's

remaining state law claims against Defendants should be dismissed because this Court should

decline to exercise supplemental jurisdiction over them. *Id.* at 12. Plaintiff objects to the F&R as it relates to the first two recommendations. ECF 40 at 9–25.

While awaiting this Court's review, the Ninth Circuit decided *Belgau v. Inslee*, No. 19-35137, 2020 WL 5541390 (9th Cir. Sept. 16, 2020), a case with immediate bearing on the present dispute. This Court will supplement Judge Russo's analysis with the benefit of the Ninth Circuit's recent decision.

## A.  Failure to State a Claim

To prevail on a claim under 42 U.S.C. § 1983, Plaintiff must show that SEIU 503 deprived her of a right secured by the Constitution and acted "under color of state law." *Collins v. Womancare*, 878 F.2d 1145, 1147 (9th Cir. 1989). Judge Russo recommended dismissing Plaintiff's 42 U.S.C. § 1983 claims against SEIU 503 because the union was not acting under color of state law when it authorized dues deductions from Plaintiff's paycheck. ECF 38 at 10–12. In her objections, Plaintiff argues SEIU 503 is a state actor because the union uses state authority to direct the State's deduction of money from public employees' wages. ECF 40 at 10–16.

The Ninth Circuit's decision in *Belgau* settles the argument. In that case, the plaintiffs were public employees who signed membership agreements authorizing Washington State to deduct union dues from their paychecks and transmit them to the Washington Federation of State Employees, AFSCME Council 28 ("WFSE"). *Belgau*, 2020 WL 5541390, at *2. The plaintiffs had the option of declining union membership and paying fair-share representation or agency fees. *Id.* After the Supreme Court's decision in *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018), which held that compelling non-members to subsidize union speech is offensive to the First Amendment, the plaintiffs notified WFSE that they no longer wanted to be union members or pay dues. *Id.* at *3. Per this request,

PAGE 3 – OPINION AND ORDER

WFSE terminated the plaintiffs' union memberships. *Id*. However, pursuant to the terms of their revised membership agreements, Washington continued to deduct union dues from the plaintiffs' wages until an irrevocable one-year term expired. *Id.*

The plaintiffs brought a putative class action against Washington's Governor Jay Inslee, and state agency directors and secretaries, as well as WFSE, alleging that the dues deductions during the irrevocable one-year term violated their First Amendment rights and unjustly enriched WFSE. *Id.* Employees sought injunctive relief against Washington from the continued payroll deduction of union dues, and compensatory damages and other relief against WFSE for union dues paid thus far. *Id.*

The Ninth Circuit held that the employees' constitutional claims against the union, brought under 42 U.S.C. § 1983, failed for lack of state action. *Id.* at *3–6. The panel explained that neither Washington's role in the alleged unconstitutional conduct nor its relationship with WFSE justified characterizing WFSE as a state actor. The court employed a two-prong inquiry to analyze the state action question, asking: (1) whether the claimed constitutional deprivation resulted from the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible, and (2) whether the party charged with the deprivation could be described in all fairness as a state actor. *Id.* at *4; *see also Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 994 (9th Cir. 2013).

This Court will address each factor set forth in *Belgau* as it applies to this case.

**1. The First Prong of the State Action Test**

Assessing the first prong of the state action test in *Belgau*, the Ninth Circuit sharpened the inquiry to the crux of the plaintiffs' constitutional harm. The court explained:

PAGE 4 – OPINION AND ORDER

> It is important to unpack the essence of [the plaintiffs']
> constitutional challenge: they do not generally contest the state's
> authority to deduct dues according to a private agreement. Rather,
> the claimed constitutional harm is that the agreements were signed
> without a constitutional waiver of rights. Thus, the "source of the
> alleged constitutional harm" is not a state statute or policy but the
> particular private agreement between the union and [the plaintiffs].

*Belgau*, 2020 WL 5541390, at *4. This reasoning applies with equal force to Plaintiff's claims

before this Court. Plaintiff alleges her signature on a union membership application was forged

*by the union*, resulting in unlawful dues deduction from her wages without her consent. ECF 1 at

¶¶ 16–23, 30, 42, 45–53. Plaintiff does not generally challenge the state's authority to deduct

dues according to a private agreement. Rather, the constitutional harm alleged is the forgery *by*

*the union* and consequent faulty authorization of union dues withdrawals, "an exclusively private

act." ECF 38 at 11. Therefore, as in *Belgau*, "the 'source of the alleged constitutional harm' is

not a state statute or policy but the particular private agreement between the union and

[Plaintiff]." *Belgau*, 2020 WL 5541390, at *4 (quoting *Ohno*, 723 F.3d at 994). Plaintiff's 42

U.S.C. § 1983 claims against SEIU 503 fail the first prong of the state action test.

### 2. The Second Prong of the State Action Test

The Ninth Circuit in *Belgau* also held that the plaintiffs' claims failed the second prong

of the state action analysis—"whether the party charged with the deprivation could be described

in all fairness as a state actor." *Id.* (internal quotation marks omitted). The court rejected theories

of state action under the joint action test.[1] *Id.* at *4–6. The court's reasoning on this prong also

applies with equal force to the facts in the present dispute.

---

[1] The Ninth Circuit also rejected a state action theory under the public function, the state
compulsion, and the governmental nexus tests. *Belgau*, 2020 WL 5541390, at *4 n.2.

PAGE 5 – OPINION AND ORDER

A private party is generally not bound by the First Amendment, *see United Steelworkers of Am. v. Sadlowski*, 457 U.S. 102, 121 n.16 (1982), unless it has acted "in concert" with the state "in effecting a particular deprivation of constitutional right," *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (citations omitted). Joint action exists where the government either "(1) affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party, or (2) otherwise has so far insinuated itself into a position of interdependence with the non-governmental party, that it is recognized as a joint participant in the challenged activity." *Belgau*, 2020 WL 5541390, at \*4 (quoting *Ohno*, 723 F.3d at 996) (internal quotation marks omitted). Neither scenario applies to Plaintiff's claims.

Plaintiff does not allege that the State played any role in the forgery or fraudulent reporting of her union membership. To be characterized as a joint actor, the State must have provided "significant assistance" to the private party. *Id.* A private party cannot be treated like a state actor where the government's involvement was only to provide "mere approval or acquiescence," "subtle encouragement," or "permission of a private choice." *See Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 54 (1999). Here, the decision to deduct dues from Plaintiff's payroll was made exclusively by a private party, "without standards established by the State." *Belgau*, 2020 WL 5541390, \*4 (quoting *Sullivan*, 526 U.S. at 52–54) (internal quotation marks omitted). Therefore, when the union membership agreement was formed (either by the union's forgery or otherwise), it was not because of any state action. *See id.*

Moreover, the State did not shape the terms of the membership agreement or the circumstances by which the agreement was executed. The State did not provide significant assistance to the underlying acts that Plaintiff contends constituted the core violation of her constitutional right—the union's forgery and authorization of dues. *See id.* at \*5 ("The state

PAGE 6 – OPINION AND ORDER

cannot be said to provide significant assistance to the underlying acts that [plaintiffs contend] constituted the core violation of its First Amendment rights if the law requires [the State] to enforce the decisions of others without inquiry into the merits of the agreement.") (internal quotation marks and citation omitted). Indeed, the law requires the State to enforce the dues deduction arrangement without an inquiry into the merits of the agreement. *See* O.R.S. § 243.806. Plaintiff appears to concede this point readily. *See* ECF 40 at 13 ("Oregon's statutory dues deduction system requires that the State comply with union instructions, asking no questions about the instructions' legality under other arguably applicable laws."). The State's "'mandatory indifference to the underlying merits' of the authorization 'refutes any characterization' of [SEIU 503] as a joint actor with [the State]." *Belgau*, 2020 WL 5541390, at *5 (quoting *Ohno*, 723 F.3d at 997).

Additionally, providing the mere apparatus to implement a private agreement by performing an administrative task does not render the State and SEIU 503 joint actors. *Id.* "The state must have 'so significantly encourage[d] the private activity as to make the State responsible for' the allegedly unconstitutional conduct." *Id.* (quoting *Sullivan*, 526 U.S. at 53). Here, as in *Belgau*, the State's role in the allegedly unconstitutional conduct was "[a]t best . . . ministerial processing of payroll deductions." *Id*. Much more is required to be considered joint actors.

Furthermore, the State was not in a position of "interdependence" with SEIU 503. *See Ohno*, 723 F.3d at 996. Interdependence exists when the "government in any meaningful way accepts benefits derived from the allegedly unconstitutional actions." *Id.* at 997. There must be a "symbiotic relationship" of mutual benefit and a "substantial degree of cooperative action." *Belgau*, 2020 WL 5541390, at *5 (quoting *Sawyer v. Johansen*, 103 F.3d 140, 140 (9th Cir.

PAGE 7 – OPINION AND ORDER

1996) (internal quotation marks omitted). A merely contractual relationship between the State

and a private party does not support joint action. *Id.*

Plaintiff does not allege that the State received any benefits as a passthrough for dues

collection. As in *Belgau*, "the state remitted the total amount to [SEIU 503] and kept nothing for

itself." *Id.*; *see also* ECF 40 at 24 ("Plaintiff's wages withheld have already remitted to the

union."). This dues deduction scheme does not place the State in a position of interdependence

with SEIU 503—the relationship is merely contractual.

Plaintiff's theory that the union dues were unlawfully taken from her as a result of SEIU

503's forgery does not undercut the clear mandate from *Belgau*. As in *Belgau*, the dispute still

surrounds the validity of the membership agreement, a private contractual matter. As in *Belgau*,

at bottom, the State's role in this alleged harm was to enforce a private agreement. Because

private dues agreements do not trigger state action and independent constitutional scrutiny, this

Court dismisses Plaintiff's 42 U.S.C. § 1983 claims against SEIU 503.

## B.  Subject Matter Jurisdiction

In the F&R, Judge Russo also found the court did not have subject matter jurisdiction

over Plaintiff's claims for equitable relief against Defendants, finding in part that Plaintiff's

claims were moot. ECF 38 at 6–10. Plaintiff objects to this finding, reiterating many of the same

arguments raised before Judge Russo, *see* ECF 28 at 31–36; ECF 32 at 9–16; ECF 40 at 16–25.

When Plaintiff filed the Complaint, the State was still allegedly deducting union dues from her

paycheck, however, the deductions stopped soon thereafter. ECF 40 at 7–8. A live dispute "must

be extant at all stages of review, not merely at the time the complaint is filed." *Preiser v.*

*Newkirk*, 422 U.S. 395, 401 (1975) (citations omitted). Thus, any prospective injunction against

Defendants would not provide relief for Plaintiff's claim of unlawful dues deductions. *See Ruiz v. City of Santa Maria*, 160 F.3d 543, 549 (9th Cir. 1998) ("Claims for injunctive relief become moot when the challenged activity ceases" and "the alleged violations could not reasonably be expected to recur." (citation omitted)).

In *Belgau*, the union deductions in question had ceased by the time the case came before the Ninth Circuit because the one-year payment commitment periods had expired. 2020 WL 5541390, at *6. Nevertheless, the Ninth Circuit held that the plaintiffs' claim against Washington State defendants for an injunction prohibiting the continued deduction of dues was not moot, as it fell within the "capable of repetition yet evading review" mootness exception. *Id.* Although *Belgau* remains quite factually similar to the present dispute, this holding on mootness does not constrain the Court's determination here.

The Ninth Circuit cabined its mootness analysis to the class action context, where "the pace of litigation and the inherently transitory nature of the claims at issue conspire to make [the mootness] requirement difficult to fulfill." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1539 (2018). The court declared "[s]uch an inherently transitory, pre-certification class-action claim falls within the capable of repetition yet evading review mootness exception if (1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the named plaintiffs could themselves suffer repeated harm or it is certain that *other persons similarly situated will have the same complaint*." *Belgau*, 2020 WL 5541390, at *6 (internal quotation marks and citations omitted) (emphasis added). The Ninth Circuit held that because the Washington State defendants continued to deduct union dues until the one-year terms expired from other public employees who objected to union membership, other persons similarly situated could be subjected to the same conduct. *Id.*

PAGE 9 – OPINION AND ORDER

By contrast, in the present dispute, Plaintiff brings claims as an individual. Here, "the capable of repetition yet evading review" mootness exception only applies where: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that *the same complaining party* will be subject to the same action again. *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007) (emphasis added). Judge Russo found that there was no reasonable likelihood Plaintiff would be injured again in an identical manner, and that an alleged expectation of repeated unauthorized dues deductions was simply not reasonable. ECF 38 at 7–9. This Court agrees with Judge Russo's analysis, ECF 38 at 6–10, and adopts this portion of the F&R in full. This Court does not have subject matter jurisdiction over Plaintiff's claims for equitable relief.

## C.  Supplemental Jurisdiction

Judge Russo recommended this Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims after dismissing Plaintiff's federal claims. ECF 38 at 12. This Court agrees with Judge Russo's analysis and adopts this portion of the F&R, ECF 38 at 12, in full.

## CONCLUSION

The F&R, ECF 38, is adopted as supplemented in this Opinion & Order. Defendants' motions to dismiss, ECF 15; ECF 19, are GRANTED, and this case is DISMISSED with leave to refile in state court.

**IT IS SO ORDERED**.

DATED this 28th day of September, 2020.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge